UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATAN DE LEON AMAYA (A-Number: 213-093-643),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY DETENTION FACILITY,<br><br>Respondent. | Case No. 1:26-cv-6419-TLN-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, Jonatan De Leon Amaya, a Guatemalan citizen appearing in pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his immigration detention without a bond hearing violates the law. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner is a Guatemalan citizen who entered the United States without permission on April 2, 2011. ECF No. 6-1 at 2-3. He has a valid asylum claim pending with the Department of Homeland Security ("DHS"). *Id.* at 2. Petitioner has lived in Florida for over fifteen years. He has a valid driver's license and current employment authorization document. ECF No. 1 at 31. Petitioner has no criminal record, no outstanding warrants, and no pending criminal charges. *Id.* Petitioner and his wife were married in Florida in 2013, *id*. at 29, and have a U.S. citizen son, *id.*

at 27. Petitioner's wife is currently pregnant with their second child. *Id*. at 31. Petitioner has been highly involved in his son's life and attaches twenty-four character letters in support of his petition. *Id*. at 16.

On the morning of June 19, 2026, DHS agents stopped petitioner when he was driving to a job interview. ECF No. 1 at 16. The agents were not targeting petitioner for arrest but believed that he fit the description of the person they were attempting to locate. ECF No. 6-1 at 2. When agents discovered that petitioner was a citizen of Guatemala who had previously entered the United States without inspection, they detained him. *Id.* Petitioner was with his minor child at the time of arrest and witnessed the detention. ECF No. 1 at 16. ICE has held petitioner in custody since that date without a bond hearing. *Id.* at 12.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his detention without a bond hearing violates the law.[1] ECF No. 1 at 6. Respondent's position is that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). ECF No. 6 at 1. Respondent concedes that "*Rodriguez Vazquez v. Bostock*,

---

[1] Petitioner's pro se filing is entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *1 n.1 (E.D. Cal. Apr. 28, 2026) (applying liberal construction to pro se immigration habeas filing).

2026 WL 2196424 (9th Cir. July 30, 2026), holds § 1226(a) governs Petitioner's detention."[2] *Id.* Respondent does not dispute any of petitioner's factual allegations.

Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A). Critically, no bond hearing is provided for a noncitizen detained under this section. *Id.* By contrast, "[u]nder § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

For decades, the government applied section 1226(a)—and not section 1225(b)(2)(A)—to noncitizens apprehended in the interior of the United States. *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."). In July 2025, however, the Department of Homeland Security ("DHS") revisited its legal position and now maintains, as in this case, that applicants for admission within the meaning of section 1225(a) are subject to mandatory detention under section 1225(b).

This issue is one of statutory interpretation, and so I begin with the plain text of the Immigration and Nationality Act. *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019). Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not

[2] On July 30, 2026, the Court of Appeals held that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, No. 25-6842, __ F.4th __, 2026 WL 2196424, at *3. Because the mandate has yet to issue, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41. This holding accords with five other Courts of Appeals. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026); *Cirrus Rojas v. Olson*, No. 25-3127, __ F.4th __, 2026 WL 2198315, at *2 (7th Cir. July 30, 2026).

clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). There is only one exception to mandatory detention: a noncitizen may be paroled into the United States "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

While the text of section 1225(b)(2)(A) limits its reach to applicants "seeking admission," section 1226(a) does not include the same qualifying language. Section 1226(a) provides that, for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."[3] 8 U.S.C. §§ 1226(a)(1)-(2).

Respondent states that it detained petitioner and denied him a bond hearing pursuant to section 8 U.S.C. § 1225(b). ECF No. 6 at 1. It concedes that under *Rodriguez Vazquez* the proper detention authority should have been 8 U.S.C. § 1226(a). *Id.* I find that the government's interpretation of section 1225 and application of that section to petitioner violates the rule against surplusage in three ways. First, for section 1225(b)(2)(A)'s mandatory detention to apply, "a noncitizen must (1) be an applicant for admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be admitted.'" *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, *11 (E.D. Cal. Oct. 16, 2025). If, as the government argues, all "applicants for admissions" were also individuals "seeking admission," the phrase "seeking admission" would be unnecessary. The government's reading, therefore, runs contrary to the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.").

---

[3] Section 1226(c) mandates detention of noncitizens falling into "one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289. There is no argument or evidence suggesting that this section applies to petitioner.

Second, the government's reading cannot be squared with the text of section 1226. Were it possible to interpret section 1225(b)(2)(A) in the manner favored by the government, section 1226(a)'s requirement that noncitizens be afforded bond hearings—arguably the section's centerpiece—would serve no purpose because the government would be allowed to detain all "applicants for admission" under section 1225(b)(2)(A). Further, as noted, under section 1226(c), Congress mandated the detention of certain categories of noncitizens. 8 U.S.C. § 1226(c). If, as the government now contends, section 1225(b)(2)(A) can be applied to all noncitizens who are inadmissible, section 1226(c) would also be superfluous.

Third, the Laken Riley Act ("LRA")—passed in January 2025—would also be rendered superfluous. The LRA amended section 1226(c) to add new categories of mandatory detention. *See Garcia v. Noem*, No. 25-cv-2180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025). Under the government's theory of section 1225(b)(2)(A), the LRA would be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted—and, in fact, required—by section 1225(b)(2)(A), the amendment would be surplusage. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

Respondent's theory, essentially, is that both sections 1226(a) and 1226(c) have been taken out of commission, not by any new law or act of Congress, but by a shift in executive branch policy. This interpretation collides squarely with the rule against surplusage. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

I also find that the government's interpretation runs contrary to the DHS's longstanding practice prior to July 2025. As noted, the government previously interpreted these provisions in the manner argued by petitioner. Prior agency practice, though not dispositive, may inform this court's determination of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is."). Other courts have emphasized the persuasive value of the DHS's "longstanding agency practice." *See Rodriguez*, 779 F. Supp. 3d at 1259 ("Congress

enacted the LRA against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

Finally, I note that arguments substantially similar to those made by the government here have been rejected by a large majority of district courts nationwide. *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). The government's argument also runs contrary to *Jennings*, which held that section 1225(b) "applies primarily to aliens seeking entry into the United States," whereas sections 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ." 583 U.S. at 289, 297. While the government's interpretation was endorsed by the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), the persuasive power of an agency ruling is limited. *See Loper Bright*, 603 U.S. at 400.

Petitioner was arrested inside the United States after living here since 2011. Respondent concedes that petitioner's detention falls under *Rodriguez Vazquez.* ECF No. 6 at 1. In other words, while the government continues to argue that petitioner is an "applicant for admission" under immigration law, it recognizes that binding authority does not support this position. Rather, that position has been overwhelmingly rejected by district courts across the nation. *See Morales-Flores v. Lyons*, No. 1:25-cv-1640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases). Accordingly, I find that petitioner's detention is governed by section 1226 and not, as respondent advances, by section 1225.[4]

Given this finding, I must determine the appropriate remedy. Petitioner requests immediate release. ECF No. 1 at 12. Respondent argues that "[p]etitioner is . . . entitled to seek a custody redetermination hearing before an immigration judge."[5] ECF No. 6 at 1.

---

[4] Respondent does not assert that it provided petitioner any of the procedural protections afforded to noncitizens detained under section 1226.

[5] In *Matter of Yajure Hurtado*, the BIA held that immigration judges lack jurisdiction to hear a request for bond where the noncitizen is detained under section 1225(b)(2)(A). 29 I. & N. Dec. at 228-29. As noted, respondent asserts that petitioner is detained under this section. ECF No. 6 at 1. Respondent provides no assurances that, if petitioner requested a bond hearing, an immigration judge would have the authority to provide him one. *See id*.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Moreover, where the government has erroneously applied section 1225(b) to a petitioner, courts have ordered immediate release. *See, e.g.*, *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025); *Cortes Cortes v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP, __ WL _____, at * 3 (E.D. Cal. Aug. 25, 2026). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

Here, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for petitioner's detention. *See Munaf*, 553 U.S. at 693. Petitioner was stopped and arrested by ICE because he was in the wrong place at the wrong time and was mistakenly identified as the target of ICE's investigation. ECF No. 6-1 at 2. He has no criminal history, warrants, or any law enforcement contacts. *Id.* Respondent does not argue that petitioner is a flight risk or danger.

Respondent does not "reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating [p]etitioner's due process rights." *See Pineda v. Chestnut*, No. 1:25-cv-1970-DC-JDP, 2026 WL 25510, at *6 (E.D. Cal. Jan. 5, 2026) (citing *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983)). Petitioner's due process rights have been violated such that the provision of a bond hearing months after his detention is constitutionally insufficient. *See Feng*, 2026 WL 472635, at *1. Under these circumstances, I find that the "typical remedy" of release is appropriate. *See Munaf*, 553 U.S. at 693.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 213-093-643) from its custody. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter in accordance with 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 27, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE